UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


| | |
|---|---|
| WILLIAM J. PARKERSON, | Case No. 2:20-cv-00445-AR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| STUART YOUNG, HEIDI STEWARD, DENNIS HOLMES, and COLLETE PETERS, | |
| Defendants. | |

_____

**ARMISTEAD, Magistrate Judge**

Plaintiff William J. Parkerson, an adult in the custody of the Oregon Department of Corrections (ODOC) and held at Two Rivers Correctional Institution (TRCI), brings this civil rights action under 42 U.S.C. § 1983. Parkerson alleges that four ODOC employees violated the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq.*, by denying his request for a kosher diet accommodation. (Compl. ¶¶ 1-9, ECF No. 2.)

Page  1   – OPINION AND ORDER

Defendants moved for summary judgment under Federal Rule of Civil Procedure 56. (Def. Mot. Summ. J., ECF No. 57.) After that motion was filed, the court sent Parkerson, who is self-represented, a notice explaining what Rule 56 requires to respond to a summary judgment motion. (Summ. J. Advice Notice, ECF No. 59.) Parkerson then filed a handwritten response and a "Statement of Disputed Facts," which were accompanied by three verified documents, titled "Statement of Facts," "Religious Beliefs Declaration," and "Plaintiff's Declaration of Disputed Material Facts."[1] (*See generally*, Pl. Resp. to Def. Mot. Summ. J. (Pl. Resp.), ECF No. 60; 28 U.S.C. § 1746.) Parkerson also relies on his verified complaint. To the extent that those verified documents express Parkerson's personal knowledge of admissible facts, the court considers them for the purpose of this motion. FED. R. CIV. P. 56(c)(4); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (the court may consider a verified complaint as an opposing affidavit under Rule 56 to the extent that it expresses personal knowledge of admissible facts).

For the reasons below, defendants' motion is GRANTED.[2]

## BACKGROUND

Parkerson is currently incarcerated at TRCI, a state prison located in Umatilla, Oregon. (Compl. ¶ 4.) Defendants are four current and former ODOC employees: (1) former Director Collette Peters; (2) former Deputy Director (and current Acting Director) Heidi Steward; (3)

---

[1] The documents are unsigned, but include the following handwritten statement: "I William J. Parkerson declare under penalty of perjury the foregoing is true and correct." Because defendants do not challenge the verification procedures of those documents, the court treats them as verified under 28 U.S.C. § 1746, and considers them to the extent relevant for this summary judgment dispute. For clarity, the court's citations refer to the documents as Parkerson titled them.

[2] The parties have consented to jurisdiction by magistrate judge as permitted by 28 U.S.C. § 636(c)(1). (Full Consent, ECF No. 43.)

now-retired Administrator of Religious Services Dennis Holmes; and (4) Religious Services Manager Stuart Young. (*Id.*; Decl. of Stuart Young ¶ 4, ECF No. 58.)

A. ***Approval and Accommodation of Kosher Diet Requests***

Defendants submit the declaration of Stuart Young to provide context about ODOC's dietary accommodation policy and the denial of Parkerson's accommodation request. Young states that, in his view, ODOC's "practice and mission" is to make "every effort to accommodate the religious beliefs of its adults in custody (AICs)." (*Id.* ¶ 5.) In line with that practice and "[w]ithin the inherent limitations of resources and the needs for facility security, safety, health and order," ODOC offers AICs opportunities to exercise their religion through dietary accommodations within the context of the Food Service's cyclical menu. (*Id.* ¶ 7 (citing OAR 291-143-0005(3)(a)).)

An AIC may request a special religious diet by submitting the request in writing to the prison's chaplain. (*Id.* ¶ 6 (citing OAR 291-143-0115).) The chaplain then reviews the request to determine whether it is covered by established rule or operational practice. If the religious activity is not covered by rule or operational practice, the chaplain has the AIC fill out a Religious Accommodation Request form. The chaplain may also conduct an interview to better understand the specific request. After evaluating the request, the chaplain sends the request and any necessary documents to the Religious Services Administration for review. (*Id.*)

Young states that, because ODOC's prison population is an insular group in which word travels quickly, when one AIC succeeds in requesting an item, the system is often "flooded with similar requests from AICs who do not necessarily share the religious beliefs as the AIC who was successful in requesting the accommodation." (*Id.*) Consequently, as Religious Services Manager, he is "careful to ascertain the sincerity of a belief, and whether a request based on that

Page 3 – OPINION AND ORDER

belief is rooted in an AIC's religion" by researching the AIC's relevant conduct before granting an accommodation request. (*Id.* ¶ 9.)

**B.     *Dietary Accommodation Request and Grievance***

On April 21, 2018, Parkerson submitted a Religious Accommodation Request to TRCI's chaplain, in which Parkerson stated that he practiced Messianic Judaism and requested placement on the kosher diet program. (*Id.* ¶ 12, Ex. 3.) In his request, Parkerson alleged that he had been approved for a kosher diet at a prior ODOC institution. He also asserted that the nonmeat alternative diet offered at TRCI did not meet his religious dietary needs and stated that he was unaware of alternative diet options to meet his needs. Parkerson's request was forwarded to Young for review. (*Id.* ¶¶ 1, 6, Ex. 1; *see also id.* ¶ 11, Ex. 2 (ODOC procedures for kosher diet accommodation requests).)

Following review, Young denied Parkerson's kosher diet request on April 25, 2018. (*Id.* ¶ 14, Ex. 4.) In the letter accompanying that denial, Young explained that Parkerson's failure to attend the relevant religious services and regular purchase of nonkosher items[3] from the canteen cast doubt on the sincerity of his religious accommodation request. Young noted also that ODOC had no record that Parkerson had previously been approved for the kosher diet program. Finally, in response to Parkerson's assertion that the nonmeat alternative diet would not meet his religious needs, Young explained:

//

//

---

[3]     At ODOC, food products available for canteen purchase are marked whether they are kosher or halal compliant. *Id.* ¶ 23, Ex. 11. Defendants submitted a record of Parkerson's canteen purchases since January 1, 2021. *Id.* ¶ 24, Ex. 12. That record shows that Parkerson continued to purchase nonkosher items after filing this action, and as recently as September 13, 2021.

Page 4 – OPINION AND ORDER

> For those whose primary concern is to avoid eating those foods identified in the Bible as unclean, the Department makes available a pork-free, meat alternative diet which includes fresh and cooked fruits and vegetables. The food is prepared and served in a manner that avoids contamination by not coming into contact with pork or alcohol, through the use of properly cleaned and sanitized cooking pots and pans, serving platters, bowls and dishes, cooking and serving utensils for each meal. The plates bowls, cups, eating utensils and meal trays to eat the food are also properly cleaned and sanitized for each meal. Additionally, [AICs] may "self-select" any meal on the menu making it possible to avoid a meal containing pork products or shellfish. This allows [AICs] to enjoy the meals offered which do not contain unclean items without always having to eat a vegetable meal.

(*Id.* ¶ 14-15, Ex 4.)

Parkerson submitted a grievance in response to that denial, which was received on June 11, 2018. (*Id.* ¶ 16, Ex. 5 (SCRI 2018-05-135).) In his grievance, Parkerson stated that he wanted "a 'full' kosher diet which includes kosher meat." Young reviewed and responded to Parkerson's grievance on June 18, 2018. (*Id.* ¶ 17, Ex. 6.) Young noted that Parkerson had the option to purchase a kosher meat item from the canteen and explained that Parkerson had not provided any additional information that would change the decision to deny his request. (*Id.*)

Parkerson appealed Young's response on June 18, 2018, again alleging that he had previously been approved for a kosher diet program. (*Id.* ¶ 18, Ex. 7.) ODOC's now-retired Administrator of Religious Services, Dennis Holmes, responded to the grievance appeal. (*Id.* ¶ 19, Ex. 8.) Holmes explained that, even if ODOC had a record of previous participation in the kosher diet program (which it did not), such participation did not automatically qualify an AIC for participation in the diet program. He denied Parkerson's grievance on the basis that Parkerson did not attend the relevant religious programs available to him and had recently purchased nonkosher items from the canteen. (*Id.*)

Page 5 – OPINION AND ORDER

Parkerson submitted a second-level appeal on July 26, 2018. (*Id.* ¶ 20, Ex. 9.) In that appeal, Parkerson stated that he purchased nonkosher items from the canteen for "inmate run stores" and that he did not attend religious services because he preferred to practice his faith in private. ODOC's Acting Director (who was at the time an Assistant Director), Heidi Steward, responded to the second-level grievance appeal on August 8, 2018. (*Id.* ¶ 21, Ex. 10.) Steward advised Parkerson that his reason given for purchasing nonkosher items from the canteen was not viable because, under OAR 291-117-0120(4), AICs are not permitted to "sell, give, loan, transfer or exchange property including canteen items with another [AIC]." She also noted that Parkerson's record showed that he had participated in Wiccan and Native American religious services. (*Id.* ¶¶ 25-26, Ex. 13 (record of Parkerson's attendance at religious services).) Although ODOC offers religious services for AICs who follow the Jewish faith tradition, Parkerson has never attended those services. (*Id.* ¶ 27.) Given those records, Steward denied Parkerson's kosher diet request on his second-level appeal, prompting Parkerson to file this action.

## LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether evidence is such that a reasonably jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh

Page 6 – OPINION AND ORDER

conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Nevertheless, the "mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to defeat summary judgment. *Anderson*, 477 U.S. at 252. Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Parkerson asserts three claims against defendants based on the denial of his request for a kosher diet accommodation. In his two § 1983 claims, he alleges that defendants—in their individual capacities—violated the First Amendment's Establishment Clause (Claim 1) and the Free Exercise Clause (Claim 2). (Compl. ¶¶ 6-8.) In his RLUIPA claim (Claim 3), he alleges that defendants—in their individual and official capacities—substantially burdened his right to freely exercise his religious beliefs. (*Id.* ¶ 9.) Parkerson requests declaratory and injunctive relief, as well as $500,000 in punitive damages.

Defendants assert that no disputed issue of material fact exists on the merits of Parkerson's claims and that summary judgment is appropriate. (Def. Mot. Summ. J. at 2.) Alternatively, they contend that the actions of Holmes, Steward, and Peters do not rise to the level of personal participation required by a § 1983 action; that Parkerson is not entitled to monetary damages under the RLUIPA; and that they are entitled to qualified immunity. (*Id.*)

As explained below, because the court resolves the merits in defendants' favor, the court declines to address their remaining arguments.

//

Page 7 – OPINION AND ORDER

A.      *Claim 1: Establishment Clause*

The Establishment Clause "prohibits the enactment of a law or official policy that establishes a religion or religious faith, or tends to do so." *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010). "The clearest command of the establishment clause is that one religion cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 243 (1982).

Establishment Clause claims involving religious diet accommodations generally are brought as challenges to dietary policies as a whole. *See, e.g.*, *Robinson v. Cate*, Case No. 2:11-cv-02555 MCE AC P, 2015 WL 5326199, at *1 (E.D. Cal. Sept. 10, 2015) (challenging failure to provide Muslim AICs with a fully Halal diet comparable to the fully Kosher diet provided to Jewish AICs under prison program). In contrast, Parkerson's claim is individual in nature; he alleges that defendants "violated the First Amendment's prohibition against the government or its officials establishing religion when they denied him a full kosher diet." (Compl. ¶ 6.)

Defendants contend that Parkerson cannot sustain Claim 1 because ODOC evaluated Parkerson's accommodation request on an individual basis and did not officially condone or disapprove of a particular religion or religious belief. (Def. Mot. Summ. J. at 10-11.) In support, they cite *Burton v. Clark*, a case from the Eastern District of California, in which an AIC alleged that a prison violated the Establishment Clause by denying his kosher diet request because "he was not found to be Jewish by the Jewish Chaplain." Case No. 1:09-cv-00061-DLB (PC), 2009 WL 3254897, at *2 (E.D. Cal. Oct. 8, 2009). Based on that allegation, the court concluded that the AIC failed to state a violation of the Establishment Clause because it appeared that the prison did not show favoritism of one religion over another. *Id.* at *3.

Like the AIC in *Burton*, Parkerson bases his Establishment Clause claim on the denial of his kosher diet request. And, as reflected in both Parkerson's verified allegations and the

Page 8 – OPINION AND ORDER

evidence submitted by defendants, that request was denied based on individual considerations—specifically, because Parkerson's routine nonkosher canteen purchases and nonattendance at Judaic religious services cast doubt on the sincerity of his request. Parkerson argues that those activities do not bear on the sincerity of his religious beliefs but does not point to evidence suggesting that his request was denied on other grounds, such as preference or disfavor for a religion. Because Parkerson has not created an issue of material fact showing that defendants favored one religion over another, the court finds that defendants are entitled to summary judgment on Claim 1.

**B.**     ***Claim 2: Free Exercise Clause***

In Claim 2, Parkerson alleges that defendants violated his right to freely exercise his religion by denying his request for a "meat inclusive kosher diet." (Compl. ¶ 8.) Before proceeding, the court clarifies that the issue for this summary judgment motion is whether defendants' actions, *i.e.*, the 2018 denial of Parkerson's request for the prison-supplied kosher meal, violated his free exercise of religion right. What is not at issue is whether Parkerson currently has a sincerely held religious belief or whether he now deserves a kosher diet based on his sincerely held religious belief. Consequently, the court does not consider the evidence put forth by Parkerson and defendants considering conduct by Parkerson or post-hoc attestations about religious belief.

To prevail on a Free Exercise claim under the First Amendment, a plaintiff must show as a threshold matter that a government action imposes a substantial burden on his free exercise of a sincerely held religious belief. *Shaker v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). When the claim is brought by an AIC challenging a prison regulation, the regulation may be valid even

if it does infringe on a sincerely held religious belief, but only if the regulation is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

To determine whether an infringing practice is reasonably related to a legitimate penological interest, the court must balance four factors: (1) whether there is a "valid, rational connection" between the regulation and the legitimate interest in question; (2) whether alternative means of freely exercising the religious belief are available to the AIC; (3) the effect that accommodation, if granted, would have on the prison community and the allocation of prison resources; and (4) the presence of "ready alternatives" that the prison could use to fully accommodate the AIC's rights at a *de minimis* cost to valid penological interests. *Id.* at 89-90. Though a government policy cannot be sustained if it fails the first factor of the *Turner* test, the court must otherwise analyze each factor given the totality of the circumstances. *Id.*

"Evaluating the sincerity of a religious belief 'is a question of fact, generally not appropriately decided in a motion for summary judgment.'" *Forter v. Young*, Case No. 6:18-cv-01171-JR, 2020 WL 1917331, at *6 (D. Or. April 20, 2020) (quoting *Shilling v. Crawford*, Case No. 205CV-00889-PMP-GWF, 2007 WL 2790623, at *16 (D. Nev. Sept. 21, 2007)). Here, however, the court need not decide whether Parkerson's religious belief was sincerely held because, even if it was, defendants' implementation of the ODOC regulation was "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89. That is, when the *Turner* test is applied to the denial of Parkerson's request for a prison-supplied kosher diet, Parkerson's free exercise of religion right was not violated.

Under the first *Turner* factor, there must be a rational connection between the restriction at issue and the legitimate government interest used to justify it. *Turner*, 482 U.S. at 89. Defendants assert that it was reasonable to assess Parkerson's religious belief in the manner that

Page 10 – OPINION AND ORDER

they did because ODOC's accommodation policy is rationally related to the legitimate penological interest of its budgetary concerns. Def. Mot. Summ. J. at 12 Parkerson counters that defendants' refusal to incur costs in providing AICs kosher diets is not a penological interest. (Decl. of Disputed Facts at 5.)

The Ninth Circuit has consistently recognized that maintaining budgetary and operational efficiency in the provision of dietary policies constitutes a legitimate penological interest. *Cotton v. Cate*, 578 Fed. Appx. 712, 714 (9th Cir. 2014) ("[P]rison officials have a legitimate penological interest in maintaining a simple food service."); *Shaker*, 514 F.3d at 886. ODOC's policy of evaluating the sincerity of an accommodation request through research, consultation, and evaluation of the AIC's conduct is rationally related to that penological interest; *Forter*, 2020 WL 1917331, at *7 ("ODOC's practices surrounding its kosher diet program and its denial of plaintiff's request to implement a new kosher diet that includes daily meat entrées are reasonably related to [a] legitimate penological interest" in budgetary and operational efficiency).

It was reasonable for ODOC to deny Parkerson's request, given that legitimate interest. To begin with, defendants have presented evidence that Parkerson was denied his request for a prison-supplied kosher diet based on his regular purchase of nonkosher items from the TRCI canteen, despite having the option to purchase labeled kosher meat and nonmeat items, and defendants argue that those purchases of nonkosher items justified a conclusion that Parkerson's religious belief was not sincerely held. *Id.* at *5 (concluding that "the undisputed fact that plaintiff has allocated his personal funds towards nearly 400 nonkosher items, instead of one kosher meat item, establishes that he is capable of fulfilling his religious dietary needs without a substantial burden placed on his free exercise of religion"). Given that Parkerson's reason for

Page 11 – OPINION AND ORDER

purchasing food for "inmate run stores" ran afoul of OAR 291-117-0120(4), which does not permit an AIC to "sell, give, loan, transfer or exchange property including canteen items with another [AIC]," defendants acted reasonably when they discounted Parkerson's excuse for purchasing nonkosher items.

Parkerson also argues that defendant should have interviewed him to ascertain the sincerity of his belief. Defendants, however, were not required to do so under ODOC's dietary accommodation policy. *See* OAR 291-143-0115 (in considering a religious accommodation request, a chaplain "*may* conduct an interview to get a better understanding of the AIC's specific request" (emphasis added)). Given Parkerson's nonkosher item purchases and that defendants had no record of his attendance at available Messianic Judaism services or of his assertion that he had been approved previously for a kosher diet, it was reasonable for defendants to not exercise their discretion to personally interview him about his observance of Messianic Judaism. Thus, the first *Turner* factor is satisfied.

The second *Turner* factor—which examines whether Parkerson had alternative means to practice his religion—also weighs in favor of upholding ODOC's policy. *Turner*, 482 U.S. at 88-89. Although Parkerson's accommodation request was denied, the record demonstrates that he had alternative ways to maintain a kosher diet if desired. For instance, for AICs whose "primary concern is to avoid eating those foods identified in the Bible as unclean," ODOC offers a "pork-free, meat alternative diet" that is "prepared and served in a manner that avoids contamination." (Young Decl. ¶ 14-15, Ex. 4.) To incorporate meat into that diet, Parkerson has options to purchase kosher meat from the canteen and to "'self-select' any meal on the [cyclical] menu . . . to avoid a meal containing pork products or shellfish." (*Id.* ¶¶ 14-15, 17, Exs. 4, 6.)

The third *Turner* factor concerns the impact that accommodation of Parkerson's request would have on other AICs, the guards, and prison resources. *Turner*, 482 U.S. at 89. Though providing a special meal for Parkerson would entail some expense and disruption to prison culinary services, analysis of this factor requires factual evidence of the degree of any disruption and costs involved. *See Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993). Generally, absent evidence of the magnitude of the financial impact of the accommodation, or that prison officials explored the possibility of accommodating the AIC, a court cannot determine whether this factor favors the AIC or the prison. *Id.* Here, defendants contend that "ODOC's budgetary needs" satisfy the third *Turner* factor because accommodation of Parkerson's request would generate expenses and disruption at TRCI. (Young Decl. ¶ 9 (attesting that ODOC's accommodation policy is vulnerable to abuse because the prison population "is an extremely insular group," such that where "one AIC is successful in requesting an item, [the system] is often flooded with similar requests from AICs.").) However, they do not present evidence of the alleged financial impact of accommodation.[4] Given the absence of such evidence, the court finds the third *Turner* factor inconclusive.

Finally, the fourth *Turner* factor requires consideration of any "obvious, easy" alternatives that would accommodate Parkerson's request at *de minimis* cost to the prison. *Turner*, 482 U.S. at 88-89. The "absence of ready alternatives is evidence of a regulation's reasonableness, while the existence of alternatives is evidence of unreasonableness." *Ward*, 1

---

[4]    In *Forter*, the ODOC defendants submitted extensive evidence "showing that the provision of the kosher diet is a sensitive and costly process, particularly because [AICs] have historically been mistrustful of the high capacity for contamination of cookware and utensils used in kosher food preparation, and is thus vulnerable to disruption by accommodations like those [that the AIC] plaintiff has requested." *Forter*, 2020 WL 1917331, at *7.

F.3d at 879. Like the third factor, that analysis generally requires facts specific to the circumstances to avoid speculation about the existence of alternatives or their cost. *Id.*

Defendants argue that, with respect to ODOC's dietary accommodation policy, "there are no alternatives, let alone 'obvious' or 'easy' ones that could comport with [ODOC's] security and budgetary concerns at *de minimis* cost." (Def. Mot. Summ. J. at 13-14; Young Decl. ¶ 8 ("The only means that we have to determine how to accommodate an AIC's religious practice is to research the religious practice, consult with religious authorities, and determine how to meet the AIC's beliefs.").) Parkerson counters that ODOC could authorize him to purchase "kosher food / meat packages through an approved vendor monthly." (Pl. Resp. at 5.) Because Parkerson does not offer evidence supporting his suggested alternative, his argument is not well taken. Therefore, given the absence of obvious or easy alternatives, the fourth *Turner* factor weighs in defendants' favor.

In summary, because Parkerson has not shown a genuine dispute of material fact that, even assuming his religious belief is sincerely held, ODOC's policy is not substantially related to a legitimate penological interest, defendants are entitled to summary judgment on Claim 2.

C.  *Claim 3: The RLUIPA*

In Claim 3, Parkerson contends that defendants' refusal to grant his kosher diet request substantially burdened the free exercise of his religion in violation of RLUIPA.[5] (Compl. ¶ 9.) Defendants counter that Parkerson's continued, regular purchase of nonkosher canteen items

---

[5]  Parkerson argues that defendants are also liable under the Religious Freedom Restoration Act of 1993 (RFRA), a statutory precursor to the RLUIPA. Resp. at 3. His argument is unavailing. In *City of Boerne v. Flores*, the Supreme Court held that, as applied to states, the RFRA was unconstitutional because it exceeded the scope of Congress's enforcement power under § 5 of the Fourteenth Amendment. 521 U.S. 507, 536 (1997). In response, Congress enacted the RLUIPA in 2000, which remains operative law.

Page 14 – OPINION AND ORDER

demonstrates that the denial of his request "did not place any restriction at all—let alone 'a significantly great restriction'—on [Parkerson's] religious exercise." (Def. Mot. Summ. J. at 9.)

To successfully bring a claim under the RLUIPA, a plaintiff must identify the religious exercise allegedly infringed upon and illustrate how the prison regulation in question substantially burdens that free exercise. *Greene v. Solano Cty. Jail*, 513 F.3d 982, 987 (9th Cir. 2008). As is the case with a free exercise claim, the plaintiff's religious exercise must be sincere. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). A substantial burden on religious exercise must impose a significant onus, meaning that the regulation puts substantial pressure on a religious adherent to modify his behavior and violate his beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). If a plaintiff successfully shows a substantial burden, the defendants must show that the regulation furthers a compelling government interest and does so by the least restrictive means. *Greene*, 513 F.3d at 988. To show that the means employed are the least restrictive, the defendant must demonstrate that they considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. *Warsoldier*, 418 F.3d at 996.

Consistent with the free exercise claim discussed above, the court views the facts in the light most favorable to Parkerson and assume that his belief was sincerely held for the purpose of this summary judgment dispute. Accordingly, the court evaluates whether, in denying Parkerson's request for a meat-inclusive kosher diet, defendants put substantial pressure on Parkerson to violate that belief and whether ODOC's policy for evaluating such requests is the least restrictive means to further a compelling government interest.

First, given defendants evidence of Parkerson's regular purchase of nonkosher items from the TRCI canteen, the court finds that Parkerson has failed to show that the denial of his request for a "meat-inclusive kosher diet" substantially burdened his ability to freely exercise his

Page 15 – OPINION AND ORDER

religious belief. Despite the denial of Parkerson's accommodation request, the record demonstrates that he may still maintain a kosher diet by opting-in to ODOC's "pork-free meat alternative diet," by self-selecting meals on ODOC's cyclical menu to avoid nonkosher options, and by purchasing kosher meat from the TRCI canteen. (Young Decl. ¶ 14-15, 17 Exs. 4, 6.) Those options "show[] that any onus [Parkerson] bears regarding his diet does not put substantial pressure on him to modify his behavior." *Forter*, 2020 WL 1917331, at *5.

Even assuming that Parkerson had raised a genuine dispute of material fact that defendants substantially burdened his belief, his RLUIPA claim still fails because defendants have shown that ODOC's policy for evaluating the sincerity of accommodation requests is the least restrictive means to further a compelling government interest. "Budgetary and operational efficiency is a well-established compelling government interest." *Id.* Defendants have presented evidence that, to satisfy that compelling interest, ODOC evaluates each accommodation request by researching the relevant religious practice, consulting religious authorities as needed, and assessing whether the AIC's conduct aligns with his individual request. (Young Decl. ¶¶ 7-10.) The record also reflects that such individual review is "the only means that [ODOC has] to determine how to accommodate an AIC's religious practice." (*Id.* ¶ 8.) Parkerson neither disputes that evidence nor argues that defendants failed to follow ODOC's policy. Accordingly, the court finds that the policy used to evaluate Parkerson's accommodation request was the least restrictive means to further a compelling government interest.

In summary, because Parkerson has not raised a genuine dispute of material fact that defendants substantially burdened his sincerely held religious belief or that ODOC's policy is not the least restrictive mans to further a compelling government interest, defendants are entitled to summary judgment on Claim 3.

## CONCLUSION

Based on the above, defendants' motion for summary judgment (ECF No. 57) is GRANTED.

IT IS SO ORDERED.

DATED December 20, 2022.

_____/s/ Jeffrey Armistead_____
JEFFREY ARMISTEAD
United States Magistrate Judge